**UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION**

SUSAN SKRZYNSKI
        Plaintiff,

vs.               CASE NO: 2:11-cv-00036-SPC

MICHAEL J. ASTRUE
Commissioner of Social Security,

        Defendant.
_____

**ORDER**

   This matter comes before the Court on the Plaintiff Susan Skrzynski's Complaint Seeking Review of the Final Decision of the Commissioner of Social Security (Commissioner) denying the Plaintiff's Claim for Disability Insurance (Doc. # 1) filed on January 28, 2011, in the Middle District of Florida, Ft. Myers Division. A Consent Form (Doc. #15) was signed by the parties indicating their agreement for jurisdiction in this matter to be exercised by the United States Magistrate Judge. The parties' consent was approved by the District Court on May 31, 2011. See Order Doc. #16. The Plaintiff filed her Memorandum of Law in Opposition to the Commissioner's Decision (Doc. #21) on August 9, 2011. The Commissioner filed the Memorandum of Law in Support of the Commissioner's Decision (Doc. #23) on October 5, 2011. Thus, the Motion is now ripe for review.

   The Undersigned has reviewed the record, including a transcript of the proceedings before the Administrative Law Judge (ALJ), the exhibits filed and administrative record, and the pleadings and memoranda submitted by the parties in this case.

## FACTS

### *Procedural History*

The Plaintiff filed a Title II application for a period of Disability and Disability Insurance Benefits on March 17, 2008. (Tr. 15, 149-56, 157-160). The Plaintiff also protectively filed a Title XVI application for supplemental social security income on March 17, 2008. (Tr. 15). Plaintiff's claims were denied initially on May 21, 2008, and upon reconsideration on July 25, 2008. (Tr. 15). The Plaintiff timely filed a written request for hearing on August 26, 2008. (Tr. 15). On March 25, 2010, a video hearing was held before the Honorable Robert Spurlin, Administrative Law Judge ("ALJ"). (Tr. 15). The ALJ issued an unfavorable decision on April 19, 2010. (Tr. 15-22). The Plaintiff filed a Request for Review of the ALJ's decision and the Appeals Council (AC) denied this request on December 8, 2010. (Tr. 1-4). Therefore, the decision of the Commissioner became final. Having exhausted all administrative remedies, the Plaintiff timely filed a Complaint with this Court. (Doc. #1).

### *Plaintiff's History*

The Plaintiff was born on July 11, 1961, making the Plaintiff 48 years of age on the date of the ALJ's decision. (Tr. 149, Doc. #21, p.3). In both applications, the Plaintiff alleges an onset disability date of December 1, 2002. (Tr. 15). The Plaintiff completed three years of college. (Tr. 182). The Plaintiff has a past relevant work as a deli clerk/deli cutter-slicer at a grocery store. (Tr. 21, 184). The Plaintiff alleges disability due to "[m]isdiagnosis with infection in kidney, tongue cancer, hernias, major affective mental depressive disorder, easily fatigued, low immune system, prone to pneumonia, [and] asthma." (Tr. 175).

*Medical and Psychological History*

Plaintiff had reported on numerous occasions that her boyfriend was abusive. (Tr. 643, 708, 819, 825). Plaintiff's earliest mental health treatment notes are from Smoky Mountain Center from January 2004, when Plaintiff reported to a psychotherapist that she was depressed and having situational stressors including conflict with her boyfriend and his mother. (Tr. 602-03). In February 2004, Plaintiff's mood was stable and she was showing signs of higher self esteem. (Tr. 599). At subsequent appointments, Plaintiff continued to complain of situational stressors from her boyfriend and family. (Tr. 20, 590-93). In September 2004, the psychotherapist encouraged Plaintiff to pursue her own interests, keep busy, and to go out and make friends. (Tr. 588). In November 2004, Plaintiff reported that she had been receiving the support she needed. (Tr. 585). By March 2005, Plaintiff reported that she was more confident, had made friends in the neighborhood, and had other children over to play with her daughter. (Tr. 583).

From April 2005 to April 2006, there is a gap in the mental health treatment notes. (Tr. 477-82). In August 2006, Frank B. Miller, M.D., Plaintiff's psychiatrist, noted that Plaintiff was improved and doing better. (Tr. 635). In February 2007, Plaintiff began seeing Amanda Burts, MSW, LCSW, at Murphy Counseling Services. Ms. Burts noted Plaintiff only had mild depression and that Plaintiff actually hoped to re-enter college. (Tr. 571). In February 2007, Dr. Miller noted that Plaintiff had a good affect, she was improved, and she had a global assessment of functioning (GAF) score of 85, indicating Plaintiff had no more than everyday problems or concerns. (Tr. 20, 631). Plaintiff also reported that her medications were helping. (Tr. 20, 631).

In subsequent visits, Plaintiff continued to complain about her relationship with her now husband, however, in June 2007, she reported her marriage was going better. (Tr. 567-68). In June

2007, Dr. Miller noted Plaintiff's current status was improved and stable and her current GAF score was 75-80, indicating Plaintiff only had slight limitations in functioning. (Tr. 20, 625). There were periods of greater symptoms such as on June 30, 2006, where the claimant had a GAF of 50, but overall the records show mild to moderate at most symptoms, and no psychotic features or thought disorder, and improvement with medication and counseling. See Exhibits 11F, 18F, and 25F. In September 2007, Plaintiff again complained to Ms. Burts of situational stressors because of her husband's drinking. In January 2008, she reported that she was in serious financial trouble, had no income, and that her husband was likely to become violent again. (Tr. 563-64, 566). In November 2007, Plaintiff began seeing Susan Fredriksen, M.D., a psychiatrist, and reported that she had never been psychiatrically hospitalized and Dr. Fredriksen recommended that Plaintiff try a mood stabilizer. (Tr. 621-22).

In February 2008, Plaintiff continued to complain about her finances and her husband's abusive behavior. (Tr. 560-61). However, in March 2008, Plaintiff reported to Dr. Fredriksen that her family and church were serving as support systems, her appetite and sleeping were all right and Dr. Fredriksen continued her on her current medication. (Tr. 611). In April 2008, Plaintiff discussed with Dr. Fredriksen her intent to move to Florida once her daughter's school was over to live with her parents and to get away from her husband. (Tr. 607). In June 2008, Plaintiff was alert and cooperative and she was not as tearful as she had been in the past and that her medications would be kept the same. (Tr. 723). In June 2008, Plaintiff moved to Florida. (Tr. 40). In October 2008, Plaintiff began treatment at the David Lawrence Center in Florida. (Tr. 879). Plaintiff's medication was working well and when she ran out for a month, she noticed return of anxiety. Id.

In 2008, the Plaintiff was found to have a complex cystic mass in the right ovary. She had

surgery on June 9, 2008. (Tr. 19). On November 26, 2008, the Plaintiff was seen for abdominal pain and was found to have "recurrent heartburn." (Tr. 19).

By December 2008 and February 2009, Plaintiff's attitude and behavior were friendly and cooperative and her affect had a full range. (Tr. 876-77). In August 2009, it was noted that Plaintiff's attitude was friendly and that her medication was effectively managing her anxiety. (Tr. 875). In November 2009, it was noted again Plaintiff's medications were effectively managing her symptoms with minimal side effects. (Tr. 874).

Records from November 11, 2009, indicate the Plaintiff was seen for abdominal pain. (Tr. 19). Again she appeared well. Records indicated that she quit drinking alcohol in 2000. (Tr. 19). She was in no acute distress with a weight of 130 pounds. (Tr. 19). The claimant had a history of colonic polyps. On March 2, 2009, she appeared well. (Tr. 19). On September 2, 2009 she was in no acute distress and not dyspneic, with no cough and she had clear breath sounds. (Tr. 19).

Despite having had asthma and bronchitis, Plaintiff continued to smoke. (Tr. 879). The Plaintiff has had a few episodes of bronchitis and cough over the years, such as on November 10, 2008, and February 27, 2009, but the record shows that her asthma is well controlled with medication. (Tr. 844-49).

Plaintiff was treated for tongue cancer, successfully, and there appears to be no lasting residual effect from this impairment other than a noticeable slur in her speech. (Tr. 549-57). Plaintiff had a resection procedure, required no radiation or chemotherapy, and it was reported that Plaintiff did well with no clear evidence of recurrence. Id.

5

### *Administrative Law Judge's Decision*

Upon consideration of the record, the Administrative Law Judge (ALJ) found that the Plaintiff has not engaged in substantial gainful activity since December 1, 2002 - the alleged onset date. (Tr. 17). The ALJ found the Plaintiff has the following severe impairments: asthma, anxiety disorder and bipolar disorder (20 CFR 404.1520(c) and 416.920(c)). (Tr. 17). However, the Plaintiff does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925, and 416.926). (Tr. 17). After careful consideration of the entire record, the ALJ concluded the Plaintiff has the residual functional capacity to perform the full range of medium work as defined in 20 CFR 404.1567(c) and 416.967(c). (Tr. 18). The ALJ also concluded that Plaintiff was able to perform the requirements of unskilled work, i.e., she is able to understand, remember and carry out simple instructions; respond appropriately to supervision, coworkers and usual work situations and is able to deal with changes in a routine work setting. (Tr. 18). However, the ALJ stated that Plaintiff needs to avoid concentrated exposure to fumes, odors, gases and poor ventilation. (Tr. 18). The ALJ found that Plaintiff could perform her past relevant work as a deli clerk/deli cutter-slicer at a grocery store due to this work not requiring the performance of work-related activities precluded by Plaintiff's residual functional capacity (20 CFR 404.1565 and 416.965). (Tr. 21). Accordingly, the ALJ found that Plaintiff has not been under a disability, as defined in the Social Security Act, from December 1, 2002, through the date of this decision (20 CFR 404.1520(f) and 416.920(f)). (Tr. 22).

## **THE STANDARD OF REVIEW**

The scope of this Court's review is limited to determining whether the ALJ applied the correct legal standards, and whether the findings are supported by substantial evidence. Hibbard v. Commissioner, WL 4365647 *2 (M.D. Fla. Dec. 12, 2007) (citing Richardson v. Perales, 402 U.S. 389, 390, 91 S. Ct. 1420, 28 L. Ed 2d 842 (1971); McRoberts v. Bowen, 841 F. 2d 1077, 1080 (11th Cir. 1988)). In evaluating whether a claimant is disabled, the ALJ must follow the sequential inquiry described in the regulations[1]. 20 C.F.R. §§ 404.1520(a), 404.920(a). The Commissioner's findings of fact are conclusive if supported by substantial evidence. 42 U.S.C. § 405(g). "Substantial evidence is more than a scintilla-*i.e.*, the evidence must do more than merely create a suspicion of the existence of a fact, and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion." Hibbard, WL 4365647 *2 (citing Foote v. Chater, 67 F.3d 1553, 1560 (11th Cir. 1995) (citing Walden v. Schweiker, 672 F.2d 835, 838 (11th Cir. 1982)); Richardson, 402 U.S. at 401.

Where the Commissioner's decision is supported by substantial evidence, the District Court

---

[1] The inquiry requires the ALJ to engage in a five-step analysis, which will either preclude or mandate a finding of disability. The steps are as follows:
  *Step 1*. Is the claimant engaged in substantial gainful activity? If the claimant is engaged in such activity, then he or she is not disabled. If not, then the ALJ must move on to the next question.
  *Step 2*. Does the claimant suffer from a severe impairment? If not, then the claimant is not disabled. If there is a severe impairment, the ALJ moves on to step three.
  *Step 3*. Does the claimant's impairment meet or equal one of the listed impairments set forth in 20 C.F.R. Part 404, Subpart P, Appendix 1. If so, then the claimant is disabled. If not, the next question must be resolved.
  *Step 4*. Can the claimant perform his or her former work? If the claimant can perform his or her past relevant work, he or she is not disabled. If not, the ALJ must answer the last question.
  *Step 5*. Can he or she engage in other work of the sort found in the national economy? If so, then the claimant is not disabled. If the claimant cannot engage in other work, then he or she is disabled. See 20 C.F.R. §§404.1520(a)-(f), 416.920(a)-(f); see also Phillips v. Barnhart, 357 F.3d 1232, 1237-40 (11th Cir. 2004); Foote v. Chater, 67 F.3d 1553, 1557 (11th Cir. 1995) (per curiam).

will affirm, even if the reviewer would have reached a contrary result as finder of fact, and even if the reviewer finds that the evidence preponderates against the Commissioner's decision. Phillips v. Barnhart, 357 F. 3d 1232, 1240 n. 8 (11th Cir. 2004). The District Court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision. Foote, 67 F.3d at 1560; Lowery v. Sullivan, 979 F.2d 835, 837 (11th Cir. 1992) (holding the court must scrutinize the entire record to determine reasonableness of factual findings).

The court "may not decide the facts anew, reweigh the evidence or substitute it's judgment for that of the [Commissioner]." Phillips, 357 F. 3d at 1240 n. 8; Dyer v. Barnhart, 357 F. 3d 1206, 1210 (11th Cir. 2005). If the Commissioner's decision is supported by substantial evidence, it should not be disturbed. Lewis v. Callahan, 125 F. 3d 1436, 1440 (11th Cir. 1997).

## DISCUSSION

The law defines disability as the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. §§ 416 (I), 423 (d)(1); 20 C.F.R. § 404.1505. The impairment must be severe, making the claimant unable to do his or her previous work, or any other substantial gainful activity which exists in the national economy. 42 U.S.C. § 423 (d)(2); 20 C.F.R. §§404.1505 - 404.1511.

The court "may not decide the facts anew, reweigh the evidence or substitute it's judgment for that of the [Commissioner]." Bloodsworth, 703 F.2d at 1239. If the Commissioner's decision is supported by substantial evidence, it should not be disturbed. Lewis v. Callahan, 125 F. 3d 1436, 1440 (11th Cir. 1997).

The Plaintiff argues the case should be remanded based upon the following errors: (1) the

ALJ failed to afford the proper weight to the State agency medical and psychological consultants in violation of SSR 96-6; and (2) the ALJ failed to consider all the social and mental demands of the Plaintiff's past relevant work.   The Government Defendant argues the ALJ's decision was based upon substantial evidence and he adequately articulated his reasoning in his decision.  The Court will consider each ground in turn.

*Whether the ALJ Failed to Give the Appropriate Weight to the State Agency Psychological Consultants and Articulate His Reasons For Doing So When Making the RFC Finding*

Plaintiff contends that the ALJ failed to specifically address the findings of the State agency psychological consultants that opined on Plaintiff's RFC. (Doc. #21, p.6). Defendant contends that the ALJ specifically discussed the mental RFC assessments of the State agency psychological consultants and his reasons why he gave such assessments some weight. (Tr. 21). See SSR 96-6p, 60 Fed, Reg, 34466, 34468 (1996). The Defendant also contends that substantial evidence supports the ALJ's consideration of such opinions. (Doc. #23, p.5).

In May 2008 and July 2008, Clifford H. Charles, Ph.D., and Margaret Barham, Ph.D., State agency psychological consultants, each reviewed the evidence of record and filled out a Psychiatric Review Technique (PRT) form (Tr. 696-709, 789-803) and a mental RFC form (Tr. 710-13, 803-06). As explained on the form, Section I of the mental RFC form is a summary of conclusions and a detailed explanation of the degree of mental limitations for each category as well as other assessment information which is recorded in section III. (Tr. 710-13, 803-06). In section III of his mental RFC form, Dr. Charles opined Plaintiff may have moderate limitations with: understanding and remembering detailed instructions, carrying out detailed instructions, maintaining concentration and attention for extended periods, in performing within a schedule, working without being distracted

and completing a work week at an acceptable pace; dealing with co-workers and supervisors; and responding appropriately to changes in the work place and setting goals. (Tr. 712). Dr. Charles opined that with such limitations, Plaintiff was able to perform simple routine repetitive tasks in a stable, low pressure setting with a minimum of intense interpersonal interactions. (Tr. 712). In Section III of his mental RFC form, Dr. Barham opined that Plaintiff could: understand and remember simple instruction; carry out simple instructions and maintain attention and concentration for simple tasks; perform simple tasks in an environment with low level social interaction; and perform simple tasks under ordinary supervision in a low stress environment. (Tr. 805). The ALJ gave both Dr. Charles' and Dr. Barham's mental RFC opinions some weight. (Tr. 21). Although the ALJ concurred with the finding that Plaintiff could understand, remember and carry out simple instructions, he found that the speculative statements that Plaintiff "may have" moderate limitations in dealing with co-workers and supervisors, and in responding appropriately to changes in the workplace and in setting goals, were not probative. (Tr. 21).

The Plaintiff argues the ALJ's failure to address the existence of the State agency medical and psychological consultant's opinions violates Social Security Ruling 96-6p. In the instant case, the ALJ states as follows:

> The undersigned also gives significant weight to the findings of the State agency medical reviewers, who found the claimant capable of performing medium work (with some environmental limitations), as the assessments are supported by the medical evidence of record. (Exhibits 10F, 16F). The undersigned gives some weight to the mental residual functional capacity assessments in Exhibits 9F and 15F, and concurs that the claimant would be able to understand, remember and carry out simple instructions. The undersigned finds not probative the speculative statements that the claimant "may have" moderate limitations in dealing with "co-workers and

10

     supervisors" and in "responding appropriately" to changes in the workplace
     and in setting goals.

(Tr. 21).

  Upon consideration of the record, the ALJ clearly summarized his decision and addressed the opinion evidence. (Tr. 21). The ALJ stated that he gave some weight to the mental residual functional capacity assessments of Drs. Charles and Burham, and concurs that the Plaintiff would be able to understand, remember, and carry out simple instructions. (Tr. 21). The ALJ did not find probative the speculative statements that the claimant "may have" moderate limitations in dealing with "co-workers and supervisors" and in "responding appropriately" to changes in the workplace and setting goals. (Tr. 21). SSR 96-6p requires the ALJ to not only consider the program physicians opinions because these physicians are considered experts, but the ALJ must also state, in his decision, the weight he has given to those opinions. See Wainwright v. Commissioner of Social Sec. Admin, 2007 WL 708971 *2 (11th Cir. Mar. 9, 2007); Goberman v. Apfel, 2001 WL 267209 (M.D. Fla. Mar. 12, 2001).

  To support this conclusion to give less than substantial weight to the mental RFC assessments, the ALJ pointed to evidence on the record that did not support the speculative statements contained within the mental RFC assessments. (Tr. 21). Specifically, the ALJ concluded that the Plaintiff retained the RFC for unskilled work in light of her: mostly high GAF scores; her noted response to treatment; and her ability to respond to life stressors such as by relocating to Florida in response to needing to leave an unhealthy relationship in North Carolina. (Tr. 21). Also, as noted by the ALJ, Plaintiff reported that her medications were

helping, (Tr. 20, 631), further undermining her allegations of disabling mental limitations.

As discussed by the ALJ, the testimony of Larry Benovitz, M.D., a medical expert testifying at the hearing as to Plaintiff's mental limitations, also supports the ALJ's RFC finding. (Tr. 21). Medical experts are considered experts in the Social Security disability programs and their opinions may be entitled to great weight if their opinions are supported by the evidence in the record. See 20 C.F.R. §§ 404.1512(b)(6), 404.1527(f)(2)(I), (iii), 413.912(b)(6), 416.927(f)(2)(l), (iii); SSR 96-6p. As discussed by the ALJ, Dr. Benovitz's testimony provides substantial evidence that Plaintiff could perform unskilled work. (Tr. 18). Dr. Benovitz reviewed the medical evidence and testified that Plaintiff's mental symptoms, including depression, anxiety, and panic disorder, were effectively controlled by her medications. (Tr. 21, 33-36). As discussed above, Plaintiff's mental health notes support Dr. Benovitz's testimony that medications helped her condition and undermines Plaintiff's allegations. (Tr. 611. 631, 874, 879). See 20 C.F.R. §§ 404.1529(c)(3)(iv), 416.929(c)(3)(iv); Harwell, 735 F.2d at 1293. Thus, as discussed by the ALJ, substantial evidence supports Dr. Benovitz's testimony and the ALJ's decision to give it controlling weight. (Tr. 21). The ALJ stated he attached great weight to the State agency medical reviewers opinions because they were consistent with and supported by the overall evidence of record. (Tr. 21).

The ALJ provided sufficient reasoning as to his finding and the Plaintiff's argument lacks merit. Thus, substantial evidence supports the ALJ's consideration and weight afforded to the opinions of the state agency psychological consultants and the medical expert. The ALJ clearly and properly articulated his reasons for giving the mental RFC assessments less

weight. Phillips, 357 F.3d at 1241. As such, good cause existed in the record to give less weight to the opinions. The ALJ may properly discount a physician's opinion if it is not supported by or is contrary to medical evidence in the record. Morrison v. Barnhart, 278 F. Supp. 1331, 1334 (M.D. Fla. 2003). In this instance, the ALJ's RFC finding that Plaintiff can perform unskilled work was supported by substantial evidence in the record. Therefore, these findings will not be disturbed.

*Whether Substantial Evidence Supports the ALJ's Finding that Plaintiff Could Perform her Past Relevant Work*

The Plaintiff argues the ALJ and Appeals Council failed to consider all of the social and mental demands of the Plaintiff's past relevant work. (Doc. # 21, p. 2). The Defendant contends that substantial evidence supported the ALJ's finding that Plaintiff could perform her past relevant work. (Doc. # 23, p.13).

The fourth step in the evaluation process requires the ALJ to determine the plaintiff's residual functional capacity (RFC) and based on that determination, decide whether the plaintiff is able to return to his/her previous work. McCruter v. Bowen, 791 F.2d 1544, 1547 (11th Cir. 1986). The determination of RFC is within the authority of the ALJ and along with the claimant's age, education, and work experience the RFC is considered in determining whether the claimant can work. Lewis v. Callahan, 125 F.3d 1436, 1440 (11th Cir. 1997) (citing 20 C.F.R. § 404.1520(f)). The RFC assessment is based upon all the relevant evidence of a claimant's remaining ability to do work despite her impairments. Phillips v. Barnhart, 357 F.3d 1232, 1238 (11th Cir. 2004); Lewis, 125 F.3d at 1440 (11th Cir. 1997) (citing 20 C.F.R. § 404.1545(a)). The ALJ must determine the claimant's RFC

13

using all relevant medical and other evidence in the case. Phillips, 357 F.3d at 1238. That is, the ALJ must determine if the claimant is limited to a particular work level. Id. (citing 20 C.F.R. § 404.1567). A claimant bears the burden of proving she cannot perform her past relevant work either as she performed it or as it is generally performed in the national economy. See Barnes v. Sullivan, 932 F.2d 1356, 1359 (11th Cir. 1991); Jackson v. Bowen, 801 F.2d 1291, 1293-94 (11th Cir. 1986).

Plaintiff claims that the ALJ did not consider the demands of Plaintiff's past relevant work with respect to interaction with the public, supervisors, co-worker's, the pace of the job, and stress level. Given Plaintiff's RFC and the demands of her past relevant work, the ALJ found that Plaintiff could perform her past relevant work as a deli clerk/deli cutter-slicer at a grocery store. (Tr. 21-22). Plaintiff argues that her past work as a deli clerk/deli-cutter-slicer involves a certain level of interaction with the public, pace and stress level that she is not capable of sustaining. (Doc. #21 at p.10).

Plaintiff's arguments are without merit as the demands depicted by Plaintiff that are required of her past relevant work are not identified in the Dictionary of Occupational Titles (DOT) description of a deli clerk/deli cutter-slicer. (Doc. #22-1).[2] The DOT description only requires a Special Vocational Preparation Level 2 (Doc. #22-1) which is consistent with the

---

[2] The Dictionary of Occupational Titles states that a Deli Cutter-Slicer "[c]uts delicatessen meats and cheeses, using slicing machine, knives, or other cutters: Places meat or cheese on cutting board and cuts slices to designated thickness, using knives or other hand cutters. Positions and clamps meat or cheese on carriage of slicing machine. Adjusts knob to set machine for desired thickness. Presses button to start motor that moves carriage past rotary blade that slices meats and cheeses. Stacks cut pieces on tray or platter, separating portions with paper. May weigh and wrap sliced foods and affix sticker showing price and weight." (Doc. #22-1).

ALJ's mental RFC finding. (Tr. 18). In addition, the DOT description does not include any specific requirements with respect to the pace or stress level of the job (Doc. #22-1) and the ALJ specifically included in his RFC finding that Plaintiff was able to respond appropriately to supervision, coworkers, and usual work situations. (Tr. 18).

Plaintiff has failed to show that she cannot perform her past relevant work as a deli clerk/deli cutter-slicer. Therefore, the ALJ's decision was supported by substantial evidence. If the Commissioner's decision is supported by substantial evidence, it should not be disturbed. Lewis, 125 F. 3d at 1440.

Accordingly it is hereby

**ORDERED**:

The decision of the Commissioner is **AFFIRMED.** The Clerk of the Court is hereby directed to issue a judgement consistent with this ruling and to thereafter close the file.

**DONE AND ORDERED** at Fort Myers, Florida, this  3rd  day of November, 2011.

*Sheri Polster Chappell*
SHERI POLSTER CHAPPELL
UNITED STATES MAGISTRATE JUDGE


Copies: Counsel of Record